WINELAND v. KNIGHTS OF THE MACCABEES OF THE WORLD.

1. BENEFICIAL ASSOCIATIONS — BY-LAWS — AGREEMENTS IN CERTIFICATE.

   The parties to a mutual benefit certificate may expressly agree to be bound by after-enacted by-laws.

2. SAME — REINCORPORATION — PLAN OF ASSESSMENT — CHANGE — ESTOPPEL.

   After the lapse of 10 years it is too late for one who was a member of a beneficial association when its reincorporation took place to insist that the certificates then in existence shall be treated, as to assessments, otherwise than as if they had been issued by the association after the reincorporation; especially when the member is insisting that a provision of the contract, ultra vires the powers of the association under the law under which it was orginally incorporated, is binding upon it by reason of increased powers given by the law under which it reincorporated.

3. SAME—PLAN OF ASSESSMENT—CHANGE.

   Where a beneficial association has a right, under its certificates and by-laws, to increase the number of its assessments to meet the demands arising from the death of members, it may levy fewer assessments, at a greater rate, so long as the increase in rates is proportional, young and old members alike contributing; and whether such action be a mere detail in management, aimed at procuring for distribution the same sum of money in a different way, or intended to actually increase the contributions over present necessities for distribution and to accumulate a fund, it may be, so long as it is proportional and reasonable, supported, as against a protesting member, by his agreement in his application to conform to and be governed by laws to be from time to time made by the representative governing body of the association.

4. SAME—DISABILITY BENEFITS—CESSATION OF ASSESSMENTS.

   A member cannot claim the right to a disability benefit payable yearly without payment of assessments, after he attains a certain age, as provided by an amendment to the by-laws since repealed, where his certificate contains no such pro-

vision, and the whole matter of assessments is one of management to be from time to time amended as the experience of the association demands, and the member agreed to be bound by amendments to the laws affecting only the part of the endowment which he should receive and the conditions of continued membership reasonably imposed.

5. SAME—DISABILITY BENEFITS—RIGHT TO WITHHOLD.

Where, at the time a benefit certificate was issued, providing for the payment of a part of the endowment annually after the member attained the age of 70 years, the association had not the statutory power to make such a contract, but it subsequently reincorporated under a statute giving it that power, the association could not afterwards, under its reserved power of amendment, so change the contract as to eliminate entirely the provision for old age benefits.

6. SAME—WAIVER OF RIGHTS.

That a member, entitled under his certificate to old age benefits, continued his membership without protest and paid his assessments after an amendment in 1899, eliminating the provision as to benefits at the age prescribed in his certificate, and also after an amendment in 1901, eliminating old age as a cause of disability, did not operate as a waiver of his right to protest in 1904 against the entire elimination of the old age benefits from his certificate, where the law of 1904 contains the first demand upon him to agree that the association's construction of the effect of its earlier action shall bind him, that the amendment of 1899 applied to existing contracts.

Appeal from St. Clair; Law, J. Submitted January 11, 1907. (Docket No. 22.) Decided July 1, 1907.

Bill by Dan St. Clair Wineland against the Knights of the Maccabees of the World to enjoin changes in the terms of his benefit certificate. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

Defendant was organized in the year 1885, under the provisions of Act No. 104, Laws 1869, entitled "An act to provide for the incorporation of co-operative and mutual

148 MICH.—39.

benefit associations," approved April 3, 1869. Articles of association are required to set out the objects of the corporation, the number of classes in such corporation, and the object of the division of such corporation into classes, all to be definitely stated, and the terms and conditions of membership therein. Management is by trustees, chosen by members, with power to adopt by-laws and to change them at pleasure—

" Except so far as they relate to the rights of the corporation to assess their members, or the members of a particular class of such corporation, and except, also, so far as said by-laws affect the rights and benefits belonging to or to be derived by the members of such corporation."

Complainant became a member of the corporation in 1892, in June. He signed an application, in which he stated:

"I hereby agree that these statements in this application and the constitution and laws of the supreme tent * * * shall form the basis of this contract for endowment; * * * neglect to pay any assessment which shall be made by the supreme tent, within the time provided by the constitution and laws, or neglect to pay the dues, * * * shall vitiate my beneficiary certificate and forfeit all payments made thereon. * * * This application and the constitution and laws of the supreme tent now in force or that may hereafter be adopted are made the sole basis of the contract between myself and the supreme tent and I, for myself and my beneficiaries, agree to conform and be governed thereby."

At the time the application was made, and the certificate hereinafter set out was issued, a by-law provided that upon a member reaching 70 years of age there should be paid to him annually one-tenth part of the sum for which his certificate was issued; such payments not to exceed, in the aggregate, the sum specified in the certificate. The statute gave defendant no power to pay, or to promise to pay, to a member a sum of money upon his attaining the age of 70 years. *Walker* v. *Commissioner*

*of Insurance,* 103 Mich. 344; *Calkins* v. *Bump,* 120 Mich. 335. No such object was stated in the articles of association. The rates of assessment per $1,000 of indemnity were fixed at sums varying from 40 cents at age 18, to $1 at age 50. The laws otherwise provided that, when the endowment fund contained less than $3,000, an assessment should be ordered upon all members, and the power of fixing the rate of assessment was asserted. Complainant was 50 years of age, and defendant issued to him a certificate, which he now holds, in the following form:

"No. 8,494.
"STATE OF PENNSYLVANIA.
"Rate of Assessment, $2.00.
"Occupation, Blacksmith. Age, 50.
"*Astra Castra.* *Numen Lumen.*
"THE SUPREME TENT
"KNIGHTS OF THE MACCABEES OF THE WORLD.
"Endowment Certificate of Membership.

"THIS CERTIFIES that Sir Knight Dan St. Clair Wineland has been regularly admitted in and is recognized as a member in good standing of Crescent Tent, No. 47, located at Pittsburg, and that in accordance with and under the provisions of the laws governing the order, his legal beneficiary, named herein, is entitled to receive one assessment on the membership, but not exceeding in amount the sum of two thousand dollars, and the said sum will be paid as a benefit to Mary A. Wineland, his wife, upon satisfactory proof of his death together with the surrender of this certificate, provided he shall have in every particular complied with the laws, rules and regulations of the order governing members and their beneficiaries, which are now in force, or may hereafter be adopted by the supreme tent, or the subordinate tent to which he belongs and has not obtained his membership by fraud or misrepresentation as to his age, physical condition or occupation when admitted to membership. If his death shall result from any occupation prohibited by the laws of the association, or he shall form personal habits in violation of the laws of the order, then this certificate shall be null and void and without force.

"In case of permanent and total disability, or upon attaining the age of seventy years, he will be entitled to

receive such part of said endowment, as provided in the laws of the order which are now in force, or which may hereafter be adopted by the supreme tent."

In July, 1893, the provision for paying a member benefits upon his reaching the age of 70 years was stricken out of the laws, and there was substituted one for the payment of benefits to those totally and permanently disabled by disease, accident, or old age, with a further provision for monthly assessments, and for paying the same rate of assessment "thereafter so long as he remains continually in good standing in the order." In 1893, the legislature by Act No. 119, Pub. Acts 1893, defined a fraternal beneficiary society, provided for incorporation of such societies, permitting, but not requiring, the reincorporation of any society, within the definition, under its provisions. 2 Comp. Laws, §§ 7740-7759. Among the powers granted to such societies is the one of paying benefits in case of accident, sickness, disability, or old age of members. Under this act, defendant reincorporated in February, 1894. Among the objects of the association stated in the articles then filed was one to pay benefits to members totally and permanently disabled as a result of disease, accident, or old age. In 1895, defendant so amended its laws as to provide for relieving all members at age of 70 years from further payment of dues and assessments, and entitling such member to receive from the disability fund annually one-tenth part of the sum for which his certificate was issued. There were further amendments to the laws in 1897, 1899, 1901, and 1904, and in 1901 and 1904 amended articles of association were filed. The change in laws in 1899 eliminated the old age benefit feature unless there was total and permanent disability arising from old age and the member was 70 years of age. In 1901, the rate of assessment to be paid by complainant was fixed at $1.40 per thousand, and the provision for benefits to members on account of old age eliminated from the articles of association and from the laws. At the regular biennial review of the supreme tent, the governing body of the as-

sociation, held in July, 1901, a commission on rates was appointed to inquire into and examine the past experience of defendant, and determine whether the rates in force were sufficient to guarantee the continued existence of the order, and to enable it to carry out its contracts of life insurance with its members. The commission so appointed consisted of the supreme commander and four other members. The committee was instructed to report at the next meeting of the supreme tent, to be held in the month of July, 1904. The committee appointed a competent actuary to investigate and to report as to the adequacy of the rates then charged, and to make a compilation of statistics, and a history of the membership with reference to the expected further contribution of its members, and the future liability of the order under its contracts. After this time, and prior to July, 1904, a careful and thorough investigation was made by the actuary so employed with the aid of the committee and the officers and employés of the order, and the results were embodied in a report of the committee made at a review of the supreme tent held in July, 1904. The changes made in 1904 were predicated on this report. Among the changes made were the following: Fixing new and advanced rates of assessment, that for one joining at the age of 50 years being $2.75 per thousand (section 329); permitting members under the age of 51 years at time of joining the order to elect before January 1, 1905, to re-rate as of date of becoming a member, upon condition that all disability benefits were waived (section 330); putting all members who were more than 55 years old on January 1, 1905, and who did not elect to re-rate as at age of entry, upon a rate of $3 per thousand (section 335); providing for additional assessments (over fixed monthly assessments) if necessary to meet obligations (section 340); providing for payment of total and permanent disability benefits to members who did not elect to re-rate (section 409); providing that monthly rates paid by all (then) present members should provide death and total and permanent disability protection to age 55, at

which time (age) each member should pay the monthly rate of $3 per thousand, and that all those permanently and totally disabled should continue to pay monthly rate, fines, dues, and other charges, as though they were not disabled (section 410); defining total and permanent disability (section 411); providing for payment of disability benefits of one-tenth face of certificate annually, payable quarter-yearly (section 412); repealing all laws, rules, and regulations theretofore existing and in conflict with the laws then adopted (section 569). Notice of the purpose to change the articles and the laws was duly published in The Bee Hive, the official organ of the association. This notice came to the attention of the complainant, and on the 15th day of July, 1904, he filed with the supreme tent a protest against the changes of which he now complains, which protest is as follows:

"To the Supreme Tent, Knights of the Macca-
  bees of the World:

"Whereas, notice has been given by the publication in the official organ of May 18, 1904, of certain revision of and amendments to the laws and articles of association of the supreme tent of the Knights of the Maccabees of the World.

"Wherein and whereby it is proposed inter alia to increase the monthly rates of all members over 60 years of age above the monthly rates as now established and fixed by my contract, also to change the period of disability protection as now fixed by my contract, also to strike down the endowment feature of my contract, under which I am entitled to the maturity of my contract at the age of 70 years and in other material respects to change and alter my contract to my detriment, and to materially change and alter the entire plan of protection from what has heretofore been established by the order.

"This is to give notice that I respectfully but positively decline to accept any such change in my contract and enter this my protest against any action of the supreme tent having for its purpose the making of such change or alteration of my contract.

"Under my contract the monthly rate is fixed at $2.00 and changed to $2.80, and this you may not change without my consent.

"My contract is one of endowment, and I am entitled thereunder to have it matured at the age of 70 years; all payments of dues and rates by me to cease at that age and the sum of $2,000.00 to be then paid to me in fixed installments, as now provided by law.

"I am entitled under my contract to total disability protection, at my present monthly rate, until the maturity of my certificate.

"I decline to consent to the surrender of any of these rights under my contract and deny the right of the association to make any law that will impair the obligation of its contract."

Complainant paid assessments 74 to 191, inclusive, at rate $1 per thousand; from 192 to 230, inclusive, he paid at rate of $1.40 per thousand; and, beginning with assessment 231, January 1, 1905, he paid to May, 1905, at the rate of $3 per thousand—his total net contribution (deducting percentages for management) being $321.80, which it is claimed is less by $141.43 than the proper amount which the experience of the defendant shows should have been paid by him.

On the 16th day of January, 1905, the complainant filed his bill of complaint in this case. He prays:

(*a*) That sections 329, 330, 333, 335 of chapter 8 of the by-laws of defendant corporation, as adopted in July, 1904, be declared void so far as they apply to certificates issued by the defendant corporation prior to July 26, 1904.

(*b*) That the defendant corporation, its officers and agents, be perpetually restrained from putting into effect and enforcing or in any way attempting to enforce the provisions of sections 329, 330, 333, 335 of the by-laws adopted July, 1904.

(*c*) That the defendant corporation, its officers and agents, be perpetually restrained from levying and collecting any assessment according to the rates set forth in section 329 of chapter 8 of the by-laws adopted in July, 1904, upon complainant and such other members as were admitted to the order prior to July, 1904.

(*d*) From canceling and annulling complainant's certificate so long as complainant shall pay the rate of assessment provided by articles of association and by-laws of

1895 of defendant corporation and otherwise remains in good standing in the order.

(e) That section 569, chapter 10, of the laws adopted in July, 1904, be declared void in so far as it effects the repeal of section 198 of the laws adopted February 11, 1891, and section 188, laws of 1895, providing for the payment of one-tenth part of the face of the certificate annually after reaching the age of 70 years, and the relieving of the member from the payment of dues and assessments after said age, and so far as it effects a repeal of the rates of assessments adopted in 1895.

Defendant answered the bill, and the proofs were taken in open court. From a decree dismissing the bill of complaint, complainant has appealed.

*Cyrus A. Hovey* (*Robert E. Bunker,* of counsel), for complainant.

*D. D. Aitken* (*Lincoln Avery* and *De Vere Hall,* of counsel), for defendant.

OSTRANDER, J. (*after stating the facts*). Assuming that a court of equity may take jurisdiction to restrain action of the defendant corporation violative of contract rights, and to preserve in force a contract of insurance according to its terms (*Langan* v. *Supreme Council Am. L. of H.,* 174 N. Y. 266; *Messer* v. *Grand Lodge A. O. U. W.,* 180 Mass. 321; *Meyer* v. *Insurance Co.,* 73 N. Y. 516), a jurisdiction which in this case is not questioned, we have investigated, with no little labor, the respective claims of counsel, the statutes which have been referred to, the history of defendant so far as it is disclosed, and the relations which have existed between defendant and this complainant. Complainant's protest does not attack the regularity of the action which the representative body has taken. It is admitted that his status as a member cannot be learned from his certificate, and that the laws of defendant, the statute, and his application must be consulted to ascertain and to state his rights. His contention is that the rate of assessment is

fixed, for him, by the certificate and by the by-law in force at the time he became a member. He concedes that the rate of assessment he should pay is $1.40 a thousand, instead of $1 a thousand, not because the defendant had the right to increase the rate without his consent, but because by paying the increased rate he waived the right to complain. He contends that by the certificate he is promised a benefit upon attaining the age of 70 years, the amount thereof being fixed by the by-law in force in 1892 at one-tenth, annually, of the sum for which he was insured, and that the contract was not in this respect ultra vires. If it was ultra vires the powers of defendant when made, the objection was removed by the act of reincorporation, aided by the by-law passed in 1895, which not only re-enacted the law of 1892 as to the amount of endowment to be paid annually, but relieved the member from payment of any assessments after becoming 70 years of age. Stated broadly, the contention for defendant is that, to the extent that the certificate promises benefits to complainant, they may not be diminished by any change in the articles or in the laws of defendant; to the extent that benefits are made to depend upon the laws of defendant in force when the certificate was issued, and (or) thereafter adopted, complainant is bound to accept the benefits which, when his certificate matures, the laws then in force provide to be paid; that the rate and the number of assessments are made by the contract to depend, and must of necessity depend, upon the exigencies and the experience of defendant.

In so far as arguments have been addressed to the point that the parties to a mutual benefit certificate may expressly agree to be bound by after-enacted by-laws, they are answered in favor of the validity of such contracts by a previous decision of this court (*Borgards* v. *Insurance Co.*, 79 Mich. 440), and, we think, by the weight of authority (*Ross* v. *Modern Brotherhood of America*, 120 Iowa, 692; *Supreme Commandery K. of G. R.* v. *Ainsworth*, 71 Ala. 449; *Beach* v. *Supreme Tent K. of M.*, 177 N.

Y. 100, 105; 1 Bacon on Benefit Societies and Life Insurance [3d Ed.], §§ 185–188). See collection of cases in note to *Supreme Council Am. L. of H.* v. *Champe,* 63 C. C. A. 282. Such an agreement being found—and there can be no doubt that it was made in the present case—the effect of the particular by-law upon the particular member depends upon whether it was one which the association might lawfully make, whether it should be applied retroactively, whether it disturbs vested rights, whether it is reasonable; some or all of which considerations, and others, may be, notwithstanding the agreement, involved in any case. So far as any such considerations seem to be involved here, they will be noticed, and may be conveniently discussed under the heads the "assessments," and the "disability benefits."

As to assessments. No limit is fixed in the statute of 1869, or in that of 1893, or in the laws of the order, of the number of asssssments which may be made. Indeed, it is contemplated that assessments shall be made whenever necessary to pay promised benefits. It is true that the laws of 1893, 1895, 1897, and 1899 fixed a rate of assessment and provided that a member should pay the same rate of assessment so long as he remained continually in good standing. This provision did not exist at the time complainant became a member, unless its equivalent is found in the statute of 1869. It is there provided that the right to change the by-laws should exist, "except so far as they relate to the rights of the corporation, to assess their members, or the members of a particular class of such corporation, and except, also, so far as said by-laws affect the rights and benefits belonging to, or to be derived by the members of such corporation." One of the powers incident to corporate existence, and implied in the absence of express restrictions, is the power to make by-laws for the government of the corporation. Under the law of its organization, this power of this corporation was restricted. The provision above recited, read in connection with the requirement that the terms and conditions of

membership should be stated in the articles of association, must be construed to mean that the terms and conditions of membership so expressed should not be changed by the adoption or amendment of by-laws. In this view, the application and the certificate, supplemented by the laws of defendant, fixed complainant's rate of assessment, and his agreement that the laws thereafter adopted should be the basis of the contract means those laws which the defendant had the right to adopt. But there was no such restriction in the law of 1893, under which defendant reincorporated, presumably with the consent of complainant, and the question arises whether such reincorporation, and the consent of members thereto, had any effect upon the terms and conditions of complainant's contract. We are of opinion that after the lapse of 10 years it is too late for one who was a member when the reincorporation took place to insist that the certificates then in existence shall be treated otherwise than as if they had been issued by the defendant after such reincorporation, especially when the member is insisting that a provision of his contract, ultra vires. the powers of defendant under the act of 1869, is binding upon defendant because of increased powers given by the statute of 1893. Whether the changes with respect to assessments made in 1904, against which he protested, are within these powers, remains to be considered. We have no doubt that it was lawful, and no violation of contract rights, for defendant to increase the number of assessments to meet the demands arising from the death of members. There seems to be no good reason why fewer assessments, at a greater rate, should not be levied, so long as the increase in rates is proportional; young and old members, alike, contributing. Whether such action be a mere detail in management aimed at procuring for distribution the same sum of money in a different way, or intended to actually increase the contributions over present necessities for distribution and to accumulate a fund,· it may be, so long as it is proportional and reasonable, supported, as against a

protesting member, by his agreement in his application to conform to and be governed by laws to be from time to time made by the representative governing body of the association.   While courts are not agreed upon this proposition, we are inclined to the views expressed in *Fullenwider* v. *Supreme Council Royal League*, 180 Ill. 621; *Messer* v. *Grand Lodge A. O. U. W.*, 180 Mass. 321; *Reynolds* v. *Supreme Council Royal Arcanum*, 192 Mass. 150; *Conner* v. *Supreme Commandery Golden Cross* (Tenn.), 97 S. W. 306.   We agree with the court below that the increased assessments are not, in view of the conditions disclosed, unreasonable.   Whether they evidence a departure from the statute purpose and plan of existence of such association is a question not presented.

As to disability benefits.   The complaint is that the plan of defendant has been modified in such manner that upon attaining the age of 70 years appellant may not receive $200, annually, without payment of assessments. As to the assessments after attaining the age of 70 years, no provision exempting members from paying them existed when complainant became a member.   Such a provision was adopted in 1895, and was subsequently repealed. The certificate contains no such provision, and the whole matter of assessments was one of management to be from time to time amended as the experience and necessities of defendant required.   The claim of complainant is based upon an amendment to defendant's laws made after he received his certificate.   Manifestly, a member may not agree to the exercise of the power to amend and repeal by-laws until such time as an amendment suits him, and then insist upon the want of power to further amend or repeal.   But we rest our decision upon the ground that complainant agreed to be bound by amendments to the laws affecting only the part of the endowment which he should receive and the conditions of continued membership reasonably imposed.   No contract rights were violated.   See cases hereinbefore cited, and, also, *Wright* v. *Insurance Co.*, 193 U. S. 657.

The provision for paying some benefit to a member on his attaining the age of 70 years is, we think, affected by different considerations.  It is an express promise, found in the certificate.  It became effective, so far as power to make it is concerned, by the reincorporation of defendant. A reasonable construction of the contract, and the one we adopt, is that by the agreement complainant is not bound to submit to an elimination of the provision for old age benefits, but only to the reasonable fixing, by the laws, of the part of the endowment which he shall receive.  That such a construction should be made, when it is reasonable, is held in *Supreme Council Am. L. of H.* v. *Jordan,* 117 Ga. 808; *Russ* v. *Supreme Council Am. L. of H.,* 110 La. 588; *Newhall* v. *Same,* 181 Mass. 111; *Langan* v. *Same,* 174 N. Y. 266; *Williams* v. *Same,* 80 App. Div. (N. Y.) 402; *Beach* v. *Supreme Tent K. of M.,* 177 N. Y. 100; *Hale* v. *Equitable Aid Union,* 168 Pa. 377; *Gaut* v. *Supreme Council Am. L. of H.,* 107 Tenn. 603 (55 L. R. A. 465); *Wuerfier* v. *Trustees, etc., Wisconsin Order of Druids,* 116 Wis. 19.  See, also, *Knights Templars', etc., Indemnity Co.* v. *Jarman,* 187 U. S. 197.  The determination of defendant to no longer engage in the business of furnishing benefits to members upon their reaching the age of 70 years does not necessarily relate to certificates outstanding when the change was made.  The power of defendant to make such a law retroactively effective is not involved, and for this reason and others this case and *Borgards* v. *Insurance Co.,* supra, and *Chambers* v. *Supreme Tent K. of M.,* 200 Pa. 244, may be distinguished.  The conclusion herein expressed is in agreement with that reached in the court below; but that court was of opinion that complainant had waived his right to now protest against the changes made in 1893, and again in 1901, relieving defendant of the obligations to pay anything upon the member reaching the age of 70 years.  The court found the waiver in the following facts:  The law of 1899 eliminated the provision as to benefits at age of 70 years.  The

law of 1901 eliminated old age as a cause of disability. Complainant without protest continued his membership and paid his assessments until July, 1904. Certain other changes were made which might be treated as compensating for rights withdrawn. We do not think these facts controlling of complainant's rights. The law of 1904 contains the first demand upon him to agree that defendant's construction of the effect of its earlier action shall bind him; that the amendment of 1899 applied to existing contracts. For the reasons given, we regard his protest against increase of rates unfounded, as is also his claim to be released from rate paying at age of 70 years. Subject to future reasonable regulations, his contract with defendant entitles him to receive, at the age of 70 years, a part of the sum mentioned in his certificate, not less than one-tenth part thereof, annually.

The decree of the circuit court is reversed, and a decree conforming with this opinion will be entered in this court. Complainant will recover costs of both courts.

McALVAY, C. J., and GRANT, BLAIR, and MONTGOMERY, JJ., concurred.